2004-NMCA-119

99 P.3d 232

Charles H. CLARK, Sr., and Bob Ann roller, as co-personal representatives of the Estate of Charles H. Clark, Jr., deceased, Plaintiffs–Appellants,

v.

LOVELACE HEALTH SYSTEMS, INC., a New Mexico Corporation, Oswaldo Pereira, M.D., Clifford Brasher, M.D., Defendants,

and

Johnson & Johnson, Inc., a New Jersey Corporation, Janssen Pharmaceutica, Inc., a New Jersey Corporation, Defendants–Appellees.

No. 23,829.

Court of Appeals of New Mexico.

Aug. 27, 2004.

Bill Chappell, Jr., Michael Hoeferkamp, Chappell Law Firm, P.A., Albuquerque, NM, for Appellants.

Deborah A. Solove, Miller, Stratvert & Torgerson, P.A., Douglas G. Schneebeck, Timothy C. Holm, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for Appellees.

## OPINION

ALARID, Judge.

{1} Plaintiffs appeal the dismissal of their civil complaint brought on behalf of Decedent for medical malpractice, wrongful death, and strict products liability. Below, Defendants moved to dismiss the complaint because it was filed after the three-year statute of limitations had run under NMSA 1978, § 41–2–2 (1961) (Wrongful Death statute). Plaintiffs argued below that a discovery rule should apply to the statute of limitations under the Wrongful Death Statute. The trial court disagreed and dismissed the complaint without prejudice. We affirm for the reasons discussed in this opinion.

## BACKGROUND

{2} Some time prior to his death, Decedent was diagnosed with severe obstructive sleep apnea and it had been recommended that he not use sedative medications. On April 8, 1998, Dr. Pereira, with the recommendation of Dr. Brasher, prescribed methadone for Decedent's pain, despite its potential for causing drowsiness. That same day, Decedent began to take the methadone. Decedent died on April 10, 1998, and an autopsy was performed. Dr. Yousef, who performed the autopsy, concluded that he died of methadone intoxication. The medication log taken at the time of death indicated that Decedent was taking methadone, along with Amitriptyline, PCN, Promethazine, Propulsid, Zantac, and Zyrtec. The autopsy revealed methadone, antidepressants and sleep medication in Decedent's system.

{3} On March 23, 2000, the FDA announced that marketing of Propulsid would be discontinued on July 14, 2000, due to its association with 341 reports of heart rhythm abnormalities and 80 reports of deaths, as of December 31, 1999. Plaintiffs filed their initial complaint on August 31, 2000. On May 9, 2001, just over three years after Decedent's death, Dr. Brasher was deposed. Dr. Brasher testified that it appeared that Decedent had taken twice the recommended dose of prescribed methadone over the two days before his death. He testified that he did not know what killed Decedent, but that, in his opinion, Propulsid would be "at the top of the list" if he were autopsied today. Dr. Brasher testified that it would not have been known on the date of Decedent's death, in 1998, that Propulsid would have ranked high as a suspect. Dr. Brasher further noted that there was a possibility of interactions with other medications taken by Decedent, but concluded that, if the autopsy was performed "today," Propulsid "would be blamed if no other obvious explanation was present." Based on this information, Plaintiffs were allowed to amend their complaint to add Defendants Johnson & Johnson (J & J), and Janssen Pharmaceutica Inc. (Janssen) relative to their products liability claim and concerning the drug Propulsid.

{4} The amended complaint was filed on March 22, 2002. Defendants successfully moved to dismiss the amended complaint as to J & J and Janssen based on the fact that it was filed over three years after Decedent died.

{5} Plaintiffs appeal the trial court's decision. According to Plaintiffs, the issue on appeal is whether the specific language in the Wrongful Death statute, stating that a cause of action accrues as of the date of death, "prevents the application of the discovery rule in the case of death."

## DISCUSSION

### Standard of Review

{6} Defendants filed a motion to dismiss the amended complaint under Rule 1–012(B)(6) NMRA 2004. Plaintiffs responded, arguing that a discovery rule should apply to the statute of limitations under the Wrongful Death statute. Following a hearing on the motion, the amended complaint was dismissed. Plaintiffs contend that the order of dismissal should be viewed as an order granting summary judgment because the trial court considered matters outside the pleadings. It appears that Plaintiffs are referring to the documents attached to their response to Defendants' motion to dismiss, which included an affidavit, portions of the deposition of Dr. Brasher, the autopsy report, the list of medications used by Decedent, and an article announcing the position of the FDA with respect to the withdrawal of Propulsid from the market. Defendants argue that the trial court "must not have considered matters outside the pleadings" for several reasons. Defendants point out that the trial court was presented with a Rule 12–012(B)(6) motion to dismiss and entered an order titled, "Order Granting Johnson & Johnson, Inc. and Janssen Pharmaceutica Inc.'s Rule 1–012(B)(6) Motion to Dismiss Plaintiffs' First Amended Complaint." Defendants, citing a federal case, also argue that the affidavit attached to the response cannot be considered under a Rule 1–012(B)(6) standard, and the attachments to the response could not change the motion to a motion for summary judgment because Defendants restricted their argument at the hearing to the allegations in the complaint

and did not rely on the information contained in the attachments. *See Dunn v. McFeeley,* 1999–NMCA–084, ¶¶ 10–11, 127 N.M. 513, 984 P.2d 760 (determining that, although the literal language of the rule states that a motion to dismiss is converted to a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the trial court, where the parties restricted their argument to the allegations of the amended complaint and did not purport to rely on attachments, and the trial court and the parties treated the motion as simply a motion to dismiss, appellate court will not decide the case on grounds not relied on by the trial court but will treat the motion as a motion to dismiss).

{7} Based on the transcript of the hearing, the parties did not rely on the factual information in the attachments to Plaintiffs' response when making their arguments to the trial court. Instead, the parties presented only legal argument regarding interpretation of the Wrongful Death statute. The trial court also did not consider the facts included in the attachments when making its decision on Defendants' motion. In fact, during the hearing, when Plaintiffs' attorney stated that he had included in the response "some of the facts about the knowledge that was apparent to the Plaintiffs at the time that they filed the case and as they proceeded," the trial court responded, "I don't have any problem with the facts," and then asked a question concerning the legal arguments that had been made. The trial court made a legal determination that "the legislature has tinkered" with the Wrongful Death statute a number of times and, if the legislature felt it necessary to change the act, it would have done so. The trial court determined that the legislature had been "fairly clear about it," and dismissed the case based on existing case law. In other words, the trial court treated the motion only as a motion to dismiss. Plaintiffs did not protest the trial court's actions, did not argue that the motion had been converted to a summary judgment motion, and did not make an offer of proof or preserve any argument regarding the factual information included in the attachments. The trial court did not review the motion as a

summary judgment motion, and we will not do so either.

■ {8} We review, de novo, a motion to dismiss under Rule 1–012(B)(6), accepting as true all of the well-pleaded facts alleged in the complaint, and "resolving all doubts in favor of the sufficiency of the complaint." *See Envtl. Control, Inc. v. City of Santa Fe,* 2002–NMCA–003, ¶ 6, 131 N.M. 450, 38 P.3d 891. We test the legal sufficiency of the complaint by reviewing only the law applicable to the claims, and not the facts in support. *Id.* As discussed below, we affirm the trial court's dismissal of the amended complaint.

### Dismissal of the Amended Complaint

{9} Plaintiffs encourage this Court to interpret the Wrongful Death statute to allow accrual of a cause of action on the date when a plaintiff knows, or with reasonable diligence should know, of the injury and its cause—otherwise known as a discovery rule. The Wrongful Death statute provides that:

> Every action instituted by virtue of the provisions of this and the preceding section [NMSA 1978, § 41–2–1] must be brought within three years after the cause of action accrues. The cause of action accrues as of the date of death.

Section 41–2–2. The second sentence of the Wrongful Death statute provides for a specific date on which a cause of action accrues, namely "as of the date of death." Plaintiffs do not argue that the statutory language is ambiguous. Instead, Plaintiffs claim primarily that the legislative history indicates the intent to insure that survivors of a deceased person would have an equal amount of time to file a claim for wrongful death as that allowed for an injured person to file a claim for injuries. Plaintiffs also argue that the Wrongful Death statute should be construed liberally in its application, and that there are policy reasons for applying a discovery rule to the Wrongful Death statute. In support of these arguments, Plaintiffs refer to other statutes in New Mexico to which a discovery rule has been applied, and refer to out-of-state cases where a discovery rule has been applied to a wrongful death statute of limitations. We note that the Tenth Circuit Court

of Appeals thoroughly addressed similar arguments in *Lujan v. Regents of Univ. of CA.,* 69 F.3d 1511 (10th Cir.1995), and looking at New Mexico law, determined that it could anticipate that our Supreme Court would not apply a discovery rule to actions for wrongful death.

### Plain Meaning of Wrongful Death Statute

■ {10} Plaintiffs do not argue that the language of the Wrongful Death statute is ambiguous. *Cf. Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 575, 698 P.2d 442, 445 (Ct.App.1984) (pointing out that the plaintiff did not argue that the statute in question was ambiguous, but asked the Court to "adopt one of his suggested meanings of the statute simply by ignoring the statutory wording"). Nevertheless, in any case involving construction of a statute, we begin with an examination of the language used by the legislature in drafting the statute. *See Bd. of Comm'rs of Doña Ana County v. Las Cruces Sun–News,* 2003–NMCA–102, ¶ 19, 134 N.M. 283, 76 P.3d 36.

■ {11} As pointed out by Defendants, our Supreme Court has stated that, "[i]n the absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitations is a judicial determination." *See Roberts v. Southwest Cmty. Health Servs.,* 114 N.M. 248, 252, 837 P.2d 442, 446 (1992) (citations omitted). Based on the plain language in the Wrongful Death statute, the legislature did provide "explicit instructions" as to the accrual date of a wrongful death cause of action—it accrues as of the date of death. *See Las Cruces Sun–News,* 2003–NMCA–102, ¶ 19, 134 N.M. 283, 76 P.3d 36 (noting that "[t]he primary indicator of legislative intent is the statute's plain language," and if that language is clear, the appellate courts "give the statute its plain and ordinary meaning and refrain from further interpretation"). Moreover, the legislature is presumed to take existing law into account when enacting new law, and absent a change by the legislature in an existing statute, "we presume that the Legislature continues to intend that the statute apply according to its original meaning." *Id.* ¶ 23. Under the plain meaning rule of interpreta-

tion, the statute clearly states that a cause of action for wrongful death is subject to a three-year statute of limitations, accruing from the date of death. Because we find that plain meaning of the statute to be unambiguous, we need not resort to rules of statutory construction. However, despite the plain language of the statute, Plaintiffs present several arguments for applying a discovery rule to the Wrongful Death statute. We briefly address those arguments below.

*Legislative History*

■ {12} Plaintiffs appear to claim that review of the legislative history of the statute will show that relying only on the literal language of the statute would lead to an unfair result in cases such as this. Plaintiffs claim that past amendments to the Wrongful Death statute indicate an attempt by the legislature to expand the time allowed for bringing a cause of action under the statute. The parties do not disagree on the historical progression of the Wrongful Death statute. The statute, created in 1882, originally provided that an action for wrongful death must be brought within one year "after the cause of action shall have accrued." Our Supreme Court interpreted the language of the statute according to its plain meaning and determined that a cause of action for wrongful death arose when the injury occurred, rather than when the death occurred. *See Natseway v. Jojola,* 56 N.M. 793, 799–800, 251 P.2d 274, 277–78 (1952). The Court stated that, because there was no ambiguity in the statute as written, it could not read into the statute any meaning other than that stated in the statute. *Id.* The dissent in *Natseway,* on the other hand, contended that the cause of action does not even come into existence until death, and therefore, the cause of action does not accrue until death occurs. *Id.* at 801, 251 P.2d at 279. In 1953, very soon after the opinion in *Natseway* was issued, the legislature amended the statute to provide for a period of three years, rather than one year, in which to bring a cause of action for wrongful death. After the 1953 amendment, the Supreme Court, in deciding whether an incompetent decedent's administrator need file suit within three years of the date of the injury or within one year of the date of the

death, noted that, although the time period for filing wrongful death claims had been extended to three years, that time still ran from the date of the decedent's injury. *See Kilkenny v. Kenney,* 68 N.M. 266, 268, 361 P.2d 149, 151 (1961). Perhaps in response to the *Kilkenny* decision, the legislature again amended the wording of the statute in 1961 to specifically provide that an action for wrongful death "accrues as of the date of death." *See* § 41–2–2.

{13} Plaintiffs claim that, prior to the 1961 amendment, the statute contained an open-ended accrual date that matched the accrual date for personal injuries under NMSA 1978, § 37–1–8 (1976). *Id.* (stating that actions "for an injury to the person or reputation of any person" must be brought within three years). This Court has, in certain cases, interpreted that section to include a discovery rule. *See Martinez v. Showa Denko, K.K.,* 1998–NMCA–111, ¶ 19, 125 N.M. 615, 964 P.2d 176 (applying discovery rule to personal injury cases involving products liability); *Hardin v. Farris,* 87 N.M. 143, 146, 530 P.2d 407, 410 (Ct.App.1974) (applying discovery rule to injury cases involving fraudulent concealment).

■ {14} Plaintiffs argue that if the legislature had not found it necessary to reverse the decision in *Kilkenny* it would not have changed the language and the Wrongful Death statute would still provide for an open-ended accrual date. Plaintiffs conclude that the 1961 amendment indicated a clear intent by the legislature to equalize the period of limitations for injuries and wrongful death. In other words, Plaintiffs argue that, had the legislature envisioned that a discovery rule might be applied to the Wrongful Death statute, it would not have changed the statutory language as it did, but would have left it open-ended for courts to interpret in the same manner as Section 37–1–8 has been interpreted. We reject this contention. The legislature has had over forty years in which to amend the Wrongful Death statute to allow for application of a discovery rule. As discussed above, the language of the Wrongful Death statute referring to the accrual of a cause of action is very specific, and despite many cases adopting a discovery rule with

respect to other statutes, the legislature has apparently not felt it necessary to amend that language. When language in a statute enacted by the legislature is unambiguous, we apply it as written, and any alteration of that language is a matter for the legislature, not for this Court. *See Irvine*, 102 N.M. at 576, 698 P.2d at 446. "The decision to extend the scope of an existing statute . . . is a matter for the Legislature, and absent an amendment to [a statutory section], we presume that the legislature continues to intend that the statute apply according to its original meaning." *State v. Cleve*, 1999–NMSC–017, ¶ 15, 127 N.M. 240, 980 P.2d 23.

### Application of Discovery Rule to Other Statutes

{15} Plaintiffs argue that our Courts have interpreted statutes of limitations in other contexts to include a discovery rule, based on open-ended accrual language. Plaintiffs specifically point to decisions involving products liability, legal malpractice, and non-qualified providers in medical malpractice. Plaintiffs cite to *Showa Denko, Roberts,* and *Sharts v. Natelson,* 118 N.M. 721, 885 P.2d 642 (1994), in support of their position. However, the injury statutes applied in those cases did not contain the absolute accrual language that is included in the Wrongful Death statute. Therefore, they are not relevant to the inquiry in this case.

### Other States Have Applied Discovery Rule

{16} Plaintiffs rely on public policy and six out-of-state cases to argue that a discovery rule should be applied to our Wrongful Death statute. Those cases, in which a discovery rule has been applied to the wrongful death act in those states, are distinguishable. Five of the cases involved either exceptional circumstances or situations where it was impossible for the plaintiff to know the cause of the decedent's death in order to be able to timely file a wrongful death claim. *See Maughan v. SW Servicing, Inc.,* 758 F.2d 1381 (10th Cir. 1985); *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143 (Alaska 1984); *Frederick v. Calbio Pharm.,* 89 Cal.App.3d 49, 152 Cal.Rptr. 292 (1979); *Fure v. Sherman Hosp.,* 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (1978);

*Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (1976).

{17} *Maughan, Frederick,* and *Shaughnessy v. Spray,* 55 Or.App. 42, 637 P.2d 182 (1981) are distinguishable in that the wrongful death statutes construed in those cases do not contain any specific language defining the date of accrual of the statute of limitations. Given this lack of specificity, these courts were free to apply their normal limitations rules in the wrongful death context.

{18} We acknowledge that the Illinois cases (*Fure* and *Praznik* ) and *Hanebuth* are not similarly distinguishable. The wrongful death statute in Illinois provides that "[e]very such action shall be commenced within two years after the death of such person." Ill.Rev.Stat.1969, ch. 70, par. 2. The Alaska statute is very similar. AS 09.55.580 ("The action shall be commenced within two years after the death.") However, given the history of New Mexico's statute and its explicit language, we do not believe we can adopt their approach.

{19} We understand the practical effect of enforcing the statute in accordance with its clear terms: defendants are better off in some cases causing the death of someone rather than leaving them alive. This result is in some ways an anomaly, but we cannot ignore or override the clear language the Legislature chose to enact.

### CONCLUSION

{20} Unlike the limitations provisions contained in other statutes, the Wrongful Death statute contains an explicit statement as to when a cause of action under that statute accrues—at the time of death. We are not at liberty to ignore that plain language, especially where the legislature has had ample opportunity to consider the issue and has not seen fit to add a discovery rule. The trial court's decision is therefore affirmed.

{21} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.