IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-028

Filing Date:  February 9, 2011

Docket No. 29,674

JOHN F. WARNER,

       Plaintiff/Counterdefendant-Appellee,

v.

HORACE CALVERT and JODY LUSK
a/k/a JODY CALVERT, Individually,
NORTH AMERICAN PIZZA SOLUTIONS,
INC., a New Mexico Corporation, and
ALBUQUERQUE PIZZA SOLUTIONS, L.L.C.,
a Limited Liability Company,

       Defendants/Counterclaimants/Crossclaimants-Appellants,

and

NINA W. TRUE and JOHN D. PHILLIPS,

       Crossdefendants/Crossclaimants-Appellees.

APPEAL FROM THE DISTRICT COURT OF  BERNALILLO COUNTY
Valerie A. Huling, District Judge

Aguilar & Aguilar, P.C.
Esteban A. Aguilar, Jr.
Albuquerque, NM

for Appellee Warner

The Frith Firm
Gilbert Houston Frith
Heather Breen
Santa Fe, NM

for Appellants

Ahmad Assed
Albuquerque, NM

George M. Allen
Telluride, CO

for Appellee True

John D. Phillips

Pro Se Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**     In this interlocutory appeal, Horace Calvert and Jody Calvert, a.k.a. Jody Lusk, North American Pizza Solutions, Inc. (NAPS) and Albuquerque Pizza Solutions, L.L.C. (APS) (hereinafter referred to as Appellants) appeal the district court's order appointing Judith Wagner as an expert witness pursuant to Rule 11-706 NMRA and determining that the valuation report prepared by Ms. Wagner in 2009 (2009 Valuation Report) may be admitted at trial.  Appellants raise two issues on appeal:  (1) Ms. Wagner may not serve as a Rule 11-706 expert witness because she was a nonparty participant in the mediation; and (2) Ms. Wagner's 2009 Valuation Report is a mediation communication that is confidential and inadmissible as evidence at trial.  This appeal presents issues of first impression under the Mediation Procedures Act (the MPA or the Act), NMSA 1978, Sections 44-7B-1 to -6 (2007), which became effective on July 1, 2007.  We affirm the district court ruling regarding the appointment of Ms. Wagner as a Rule 11-706 expert witness, but we reverse regarding the admissibility of Ms. Wagner's 2009 Valuation Report.

**BACKGROUND**

**{2}**     Although this case has an extensive history, we limit our recitation of the factual and procedural history to those details pertinent to the issues on interlocutory appeal.  In the underlying lawsuit, Appellee John Warner (Warner) and Crossclaimant-Appellee Nina True (True) each claim entitlement to money damages as well as stock in Defendant corporations, NAPS and APS.  Warner and True each allegedly loaned Crossdefendant-Appellee John Phillips (Phillips) funds for purposes of building and operating a new APS franchise.  Both loans were allegedly secured with interest in Phillips' stock in NAPS, and concomitantly, his membership interest in APS.  Additionally, Phillips allegedly executed assignments separately transferring his equity interest in NAPS to both Warner and True.

**{3}**     On September 18, 2008, the district court referred this case to a settlement conference and appointed a settlement facilitator.  During the first settlement conference on February

2

22, 2008, the facilitator's outcome report indicates that "[t]he parties reached an agreement to obtain some additional information, necessary to settlement evaluation, before reconvening" for a second settlement conference. At that conference, the parties also entered a written agreement to hire an expert to perform a valuation of NAPS, which was signed by all parties. The agreement recognized that True and Warner were "unable to fully evaluate [Defendants'] settlement offer without a valuation of the business and a valuation of the stock owned by John Phillips." As a result, the parties agreed to retain Ms. Wagner to perform a valuation of NAPS and further agreed that the cost of the valuation would be split equally between the parties. Once the valuation was completed, the parties agreed to determine if a settlement could be reached based on the initial settlement offer, and if not, the parties agreed to participate in a second settlement conference.

**{4}** On March 28, 2008, Ms. Wagner drafted a letter of engagement regarding the terms of the business valuation, which each of the parties ultimately signed. The letter stated that the "purpose of the valuation is to provide information relating to the value of NAPS and Mr. Phillips' disputed value therein for purposes of mediation." The letter clarified that Ms. Wagner was not acting as an arbitrator in the dispute and that any agreement as to the value ultimately agreed upon between the parties would be their own. The parties retained Ms. Wagner to create the 2009 Valuation Report "for purposes of mediation" and agreed that distribution of the report would be restricted to mediation purposes and internal use by the parties' tax and legal advisors. Finally, the letter contemplated that additional fees would apply if Ms. Wagner was requested to testify. The letter clarified that the original fee estimate included drafting the 2009 Valuation Report, but it did not include "any services that may be required to defend [the] valuation report in litigation, including conferences, depositions, court appearances and testimony."

**{5}** A second settlement conference was originally scheduled for October 6, 2008, but it was rescheduled for January 14, 2009, in order to allow time for the 2009 Valuation Report to be completed prior to the mediation. The report was completed on January 8, 2009. The report's preface indicates that "[t]he purpose of the valuation is to provide information relating to the value of NAPS and Mr. Phillips' disputed value therein for purposes of mediation." The report further indicated that the calculation was "prepared for mediation purposes only and should not be provided to third parties without the express written consent of Wagner Valuation & Financial Forensics, LLC." Finally, the report reiterated that the "calculation was performed solely to assist [the parties] in mediation" and that the resulting estimate of value "should not be used for any other purpose" without the express written consent of Wagner. The second settlement conference did not result in settlement, and this case was subsequently scheduled for trial.

**{6}** On March 2, 2009, Warner filed a motion to appoint Ms. Wagner as an expert witness pursuant to Rule 11-706. After a hearing on the matter, the district court entered an order on May 18, 2009, appointing Ms. Wagner as the district court's Rule 11-706 expert witness. The district court ordered that the cost of Ms. Wagner's services would be split equally between the parties, pending the district court's review. Additionally, the court ruled

3

that Ms. Wagner's 2009 Valuation Report "may be admitted at trial to show liability of any and all claims in this lawsuit and to determine the amount of liability and/or punitive damages if any," subject to possible limitations on its use based on further motion by the parties.

{7}     Appellants requested an interlocutory appeal of the district court's order appointing Ms. Wagner as a Rule 11-706 expert witness, and the district court entered an order certifying the issue for interlocutory appeal to this Court.  The district court reasoned that the issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order or decision may materially advance the ultimate termination of the litigation."  The district court also entered findings that Ms. Wagner "was retained by the parties to perform a valuation of [NAPS] for purposes of mediation," that the court appointed Ms. Wagner as a Rule 11-706 expert witness, and that Appellants requested an interlocutory appeal based upon Ms. Wagner's "role in the mediation and her agreement to prepare a valuation for purposes of mediation between the parties."

**DISCUSSION**

{8}     This appeal requires an interpretation of the newly enacted MPA.  Only one published New Mexico case has cited to the MPA, but the Act did not control the outcome of that case.  *See Carlsbad Hotel Assocs., L.L.C. v. Patterson-UTI Drilling Co.*, 2009-NMCA-005, ¶ 31, 145 N.M. 385, 199 P.3d 288 (noting that the MPA was enacted after the settlement conference had already occurred and that it did not control the outcome of the case).  The MPA applies to mediators, mediation parties, and nonparty participants in mediations where the parties were either "required to mediate by statute or court or administrative agency rule or [were] referred to mediation by a court, administrative agency or arbitrator." Section 44-7B-3(A)(1). The MPA also applies where the parties and mediator agree to participate in mediation and evidence that agreement with "a record that is signed by the mediation parties."  Section 44-7B-3(A)(2).  The district court referred this case to a settlement conference on September 18, 2007, and the settlement conferences occurred after the effective date of the MPA.  As a result, the MPA is applicable to this case pursuant to Section 44-7B-3(A)(1).

{9}     Appellants raise two issues on appeal pursuant to the MPA.  Appellants contend that Ms. Wagner may not serve as a Rule 11-706 expert witness because she was a nonparty participant in the mediation, as defined by Section 44-7B-2. Additionally, Appellants argue that Ms. Wagner's 2009 Valuation Report is a mediation communication that is confidential and inadmissible as evidence at trial, pursuant to Section 44-7B-4.

**A.     Review of Expert Witness Issue on Interlocutory Appeal**

{10}    As a preliminary matter, we address Warner's argument that the issue of whether Ms. Wagner may testify as a Rule 11-706 expert is not "ripe" for interlocutory review.  We

4

determine that the district court order properly certified the expert witness issue to this Court for interlocutory review, pursuant to NMSA 1978, Section 39-3-4(A) (1999). Specifically, the district court's order indicated that its appointment of Ms. Wagner as a Rule 11-706 expert witness "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order or decision may materially advance the ultimate termination of the litigation." As a result, the district court's order appointing Ms. Wagner as an expert witness is appropriate for review on interlocutory appeal. *See Candelaria v. Middle Rio Grande Conservancy Dist.*, 107 N.M. 579, 581, 761 P.2d 457, 459 (Ct. App. 1988) (reasoning that interlocutory appeals are allowed when the district court identifies an issue and certifies that "the order involves a controlling question of law on which there is substantial ground for difference of opinion," and "resolution of the question will materially advance the ultimate termination of the litigation").

## B.      Interpretation of the Mediation Procedures Act

**{11}**     We first examine whether the MPA imposes any limitations that would prevent Ms. Wagner from either testifying or disclosing the contents of her 2009 Valuation Report as a result of her being retained by the parties to prepare the report for mediation purposes.

**{12}**     The meaning of statutory language "is a question of law that we review de novo." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 7, 148 N.M. 426, 237 P.3d 728 (internal quotation marks and citation omitted). In interpreting a statute, our goal is to "determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. Pursuant to the Uniform Statute and Rule Construction Act, "[t]he text of a statute or rule is the primary, essential source of its meaning." NMSA 1978, § 12-2A-19 (1997). As a result, we first examine "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different [meaning] was intended." *N.M. Indus. Energy Consumers v. N.M. Pub. Reg. Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. "[W]hen a statute contains language [that] is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). "Only if an ambiguity exists will we proceed further in our statutory construction analysis." *Marbob Energy Corp.*, 2009-NMSC-013, ¶ 9.

### 1.      Definition of a Nonparty Participant in a Mediation

**{13}**     As a preliminary matter, we examine how the MPA defines Ms. Wagner's role in the mediation. Appellants argue that Ms. Wagner served as a "nonparty participant" in the mediation, as defined by Section 44-7B-2(F). We agree based upon the plain language of the defined term. The MPA defines a nonparty participant as "a person, other than a mediation party or mediator, who participates in, is present during the mediation or is a mediation program administrator, including a person consulted by a mediation party to assist

the mediation party with evaluating, considering or generating offers of settlement." Section 44-7B-2(F).

{14}    Ms. Wagner was a nonparty participant in the mediation because she was retained by the parties to assist the mediation process by preparing a report that would allow Warner and True to more accurately evaluate the settlement offer of NAPS and Phillips. At the first settlement conference, the facilitator's outcome report indicated that "[t]he parties reached an agreement to obtain some additional information, *necessary to settlement evaluation*, before reconvening" for a second settlement conference. (Emphasis added.) Moreover, the agreement entered by the parties at the first settlement conference indicates that the parties agreed to hire Ms. Wagner to perform a valuation of NAPS because True and Warner were *"unable to fully evaluate [Defendants'] settlement offer* without a valuation of the business and a valuation of the stock owned by John Phillips." (Emphasis added.) As a result, the parties mutually agreed to retain Ms. Wagner. The engagement agreement specifically indicated that her valuation service were to be performed "for purposes of mediation." The importance of Ms. Wagner's valuation to reconvening mediation was further highlighted by the rescheduling of the second settlement conference in order to allow the valuation report to be completed. Consequently, Ms. Wagner was a nonparty participant in the mediation because she was consulted and retained by the parties to prepare specific documentation that would assist with the settlement evaluations during the mediation process.

{15}    Warner argues that Ms. Wagner does not qualify as a nonparty participant because she was not present and did not personally participate in either settlement conference. However, the MPA does not require that a nonparty participant be physically present or participate at the actual settlement conference. Instead, the use of the conjunctive word "or" to connect each statutory phrase indicates that there are three distinct alternative circumstances under which a person may qualify as a nonparty participant: (1) participating in the mediation, (2) being present at the mediation, or (3) serving as a "mediation program administrator, including a person consulted by a mediation party to assist in evaluating, considering, or generating offers of settlement." Section 44-7B-2(F); *see Wilson v. Denver*, 1998-NMSC-016, ¶ 17, 125 N.M. 308, 961 P.2d 153 (holding that the use of the word "or" in a statute means that any of the listed alternatives will suffice unless the context of the statute indicates otherwise). Consequently, the fact that Ms. Wagner was not physically present at either of the settlement conferences does not preclude her from being a nonparty participant in the mediation. Moreover, we need not decide whether Ms. Wagner's actions constituted "participating" in the mediation under the first prong of the definition because she clearly qualifies as a nonparty participant under the third prong as a result of being consulted by the parties to assist in their evaluation of the proposed settlement offer.

{16}    Warner further argues that Ms. Wagner does not qualify as a nonparty participant because her valuation was not completed at the request of the mediator or for use by the mediator. However, the definition of a nonparty participant expressly includes a person who was "consulted by a *mediation party* to assist the *mediation party* with evaluating, considering or generating offers of settlement." Section 44-7B-2(F) (emphasis added). The

6

Act clarifies that a "mediation party" is "a person who participates in a mediation and whose agreement is necessary to resolve the dispute." Section 44-7B-2(C). Hence, the parties in this lawsuit were the mediation parties under the MPA because their participation and agreement was necessary to resolve the dispute being litigated. Consequently, under the plain language of the Act, a nonparty participant need not be consulted by the mediator or asked to directly assist the mediator. Instead, as in this case, a nonparty participant includes a person consulted by the mediation parties to assist the parties in evaluating a settlement offer. As a result, the MPA defines Ms. Wagner's role in the mediation as that of a nonparty participant.

## 2. Nonparty Participant Testimony at Trial

{17}   Appellants argue that the MPA prevents Ms. Wagner from testifying at trial because she was a nonparty participant in the mediation. We disagree based upon an examination of the MPA as a whole and consideration of how its provisions relate to one another in the overall settlement process. *See N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947 (determining that the entire statute should be construed "as a whole so that all the provisions will be considered in relation to one another" (internal quotation marks and citation omitted)). Although the MPA contains a specific provision limiting the disclosure of matters related to mediation communications by a mediator, the MPA does not impose limitations specific to nonparty participants in a mediation. Section 44-7B-5(C). However, the general provisions of the Act are applicable to nonparty participants. *See* § 44-7B-3 (stating that the MPA applies to mediators, nonparty participants, and mediation parties). One general  provision states that "[e]xcept as otherwise provided in the [MPA] . . . or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding." Section 44-7B-4. The MPA also includes generally applicable exceptions, which permit disclosure and admissibility of mediation communications under certain circumstances. Section 44-7B-5(A) & (B). The MPA does not, however, contain any general prohibitions against nonparty participants testifying at trial.

{18}   We "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). We read Section 44-7B-4 to prevent a nonparty participant from disclosing mediation communications, absent an applicable exception in Section 44-7B-5 or other judicial court rules. The MPA does not contain any additional provisions that further limit a nonparty participant's disclosure or testimony. In this context, we must now address Ms. Wagner's participation in the mediation. Ms. Wagner did not testify before the mediator; however, her valuation report was prepared for the parties so that they could better assess the offer pending during the mediation process. We interpret the MPA to limit the content of a nonparty participant's testimony at trial to prevent the disclosure of mediation communications absent an applicable exception. Consequently, the MPA does not prohibit Ms. Wagner from testifying at trial, but it may limit the scope of her testimony. Where such

7

a limitation makes sense as written and the parties do not argue that the statutory language is ambiguous, we apply the language of the Act as written and leave any alternation or extension of the scope of the MPA to the Legislature. *See Clark v. Lovelace Health Sys., Inc.*, 2004-NMCA-119, ¶ 14, 136 N.M. 411, 99 P.3d 232 (reasoning that when statutory language is unambiguous, this Court applies it as written, leaving any alteration or extension of the scope of a statute to the Legislature).

## 3.    Limitations and Admissibility of Mediation Communications

**{19}**    Appellants argue that the MPA prohibits Ms. Wagner from testifying regarding her valuation of NAPS and the 2009 Valuation Report because the report is a mediation communication.  Appellants also contend that Ms. Wagner may not testify regarding her communications with the parties during the mediation process.  However, Appellants cite neither the record nor case law to develop their argument regarding whether any additional communications beyond Ms. Wagner's 2009 Valuation Report qualify as mediation communications.  Consequently, we only address whether Ms. Wagner's 2009 Valuation Report qualifies as a mediation communication and do not address any additional communications between Ms. Wagner and the parties. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (concluding that this Court has no duty to review an argument that is not adequately developed with facts, citation to the record, and authority).

**{20}**    The MPA defines a "mediation communication" as "a statement, whether oral or in a record or verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing or reconvening a mediation or retaining a mediator."  Section 44-7B-2(B).  As previously discussed, "[e]xcept as otherwise provided in the [MPA] . . . or by applicable judicial court rules, all mediation communications are confidential, and  not subject to disclosure and shall not be used as evidence in any proceeding."  Section 44-7B-4.  The only exceptions under the MPA to the confidentiality of mediation communications are identified in Section 44-7B-5.

**{21}**    Based upon the plain language of the MPA, Ms. Wagner's 2009 Valuation Report is a mediation communication because it is a written statement that was "made for purposes of considering, conducting, participating in, initiating, continuing or reconvening a mediation."  Section 44-7B-2(B).  At the first settlement conference, the facilitator's outcome report indicated that "the parties reached an agreement to obtain some additional information, *necessary to settlement evaluation*, *before reconvening*" for a second settlement conference. (Emphasis added.) Moreover, the pleadings and the parties' written agreements confirm that Ms. Wagner was retained to perform a valuation of NAPS "for purposes of mediation" due to Warner and True's inability to fully evaluate the settlement offer without a valuation.  The agreement expressly states that "[o]nce the evaluation is done, the parties will determine if a settlement can be reach[ed] and, if they are not able to agree, the parties will participate in a second mediation at which all of the parties shall appear and attend."  Similarly, the parties' engagement agreement regarding the retention of Ms. Wagner and the

8

2009 Valuation Report itself both state that Ms. Wagner's valuation was performed for purposes of mediation. Finally, the rescheduling of the second settlement conference in order to allow the 2009 Valuation Report to be completed further emphasizes the report's centrality to reconvening mediation. As a result, we conclude that the 2009 Valuation Report is a mediation communication because it was prepared for purposes of considering the settlement offer from the first settlement conference and for participating in, initiating, or reconvening a second settlement conference.

**{22}** The parties do not contend that the definition of a mediation communication is ambiguous. Instead, Warner appears to argue that the 2009 Valuation Report does not qualify as a mediation communication because the underlying documents that Ms. Wagner used to prepare the report are discoverable and not confidential. Warner relies upon Section 44-7B-5(D)(1) of the MPA, which states that "[n]othing in the [MPA] shall prevent . . . the discovery or admissibility of any evidence that is otherwise discoverable or admissible, merely because the evidence was presented during a mediation." The district court determined and Appellants do not dispute that the documents underlying the 2009 Valuation Report are discoverable and admissible. Such underlying documents remain fully admissible at trial. However, the issue on appeal is whether the 2009 Valuation Report itself is admissible. We conclude that the 2009 Valuation Report was not an underlying document and is not admissible pursuant to Section 44-7B-5(A)(1) because the MPA provides that such mediation communications "are not subject to disclosure and *shall not* be used as evidence in any proceeding" unless an exception applies. Section 44-7B-4 (emphasis added). As defined by the Uniform Statute and Rule Construction Act, the words "'shall not' prohibit the exercise of a power, authority, privilege or right." NMSA 1978, § 12-2A-4(C) (1997). Consequently, the MPA contains mandatory language that prevents disclosure and admissibility of the 2009 Valuation Report that was prepared for mediation, unless an exception applies. *See Marbob Energy Corp.*, 2009-NMSC-013, ¶ 22 (reasoning that "'shall' indicates that [a] provision is mandatory, and we must assume that the Legislature intended the provision to be mandatory absent a[] clear indication to the contrary").

**{23}** We further conclude that no exception permits the disclosure of the 2009 Valuation Report at trial. The MPA provides that mediation communications are not confidential if the communications meet one of ten exceptions, including where the communications

> (1) are contained in an agreement reached by the mediation parties during a mediation . . . ; (2) are communications that all mediation parties agree may be disclosed . . . ; (3) threaten or lead to actual violence in the mediation; (4) reveal the intent of a mediation party to commit a felony or inflict bodily harm . . . ; (5) disprove a felony charge; (6) are required by law to be made public or otherwise disclosed; (7) relate to abuse, neglect or criminal activity that is not the subject of the mediation; (8) are sought or offered to disprove a claim or complaint of professional misconduct or malpractice . . . ; (9) relate to the administrative facts of the mediation . . . ; or (10) relate to whether the parties reached a binding and enforceable settlement in the

9

mediation."

Section 44-7B-5(A).  Additionally, the MPA states that "[m]ediation communications may be disclosed if a court, after hearing in camera and for good cause shown, orders disclosure of evidence that is sought to be offered and is not otherwise available." Section 44-7B-5(B).

**{24}** Warner argues that pursuant to Section 44-7B-5(A)(2), Ms. Wagner's 2009 Valuation Report and the documents produced to her are not confidential because the parties reached an agreement at the mediation that all parties were entitled to any information given to Ms. Wagner for the valuation.  Section 44-7B-5(A)(2) provides that mediation communications are not confidential if they "are communications that all mediation parties agree may be disclosed, as evidenced by a record signed by all mediation parties prior to or at the mediation."  At the first settlement conference, the parties agreed that "[t]he parties are entitled to disclosure of any documents upon which Ms. Wagner relies for her opinions, subject to a [c]onfidentiality [o]rder."  However, the agreement does not contain any language indicating that the 2009 Valuation Report may be disclosed and  was not confidential.   Moreover, the letter engaging Ms. Wagner's services supports the determination that Ms. Wagner and the parties agreed that the 2009 Valuation Report was confidential and not subject to disclosure.  The letter, which was signed by all of the parties, expressly states that the distribution of the 2009 Valuation Report is restricted to internal use by the parties' tax and legal advisors and "for purposes of mediation only and accordingly, will not be distributed to outside parties to obtain credit or for any other purposes." Consequently, we conclude that the parties did agree that the 2009 Valuation Report itself was a confidential mediation communication that could not be used for any other purpose, including disclosure or use at trial.

**{25}** Finally, we recognize that our interpretation of whether Ms. Wagner's 2009 Valuation Report is a mediation communication is also consistent with the Uniform Mediation Act (UMA).  The definition of "mediation communication" in the MPA is exactly the same as the UMA definition.  *Compare* MPA, § 44-7B-2(B), *with* Unif. Mediation Act § 2(2), U.L.A. Med § 2 (2009).  Moreover the UMA commentary regarding a mediation communication indicates that whether the document is prepared for the mediation is crucial to determining whether the document is a mediation communication.  Unif. Mediation Act, § 2(2) cmt., U.L.A. Med § 2.  The commentary further indicates that documents prepared for mediation by an expert witness may be included in the definition.  *Id.*  Consequently, because the 2009 Valuation Report was prepared for the mediation, the UMA supports the determination that it qualifies as a mediation communication.

## C.    Limitations Imposed by the Parties' Agreements

**{26}** Interpretation of the parties' agreements is a question of law that we review de novo. *Campbell v. Millennium Ventures, LLC*, 2002-NMCA-101, ¶ 15, 132 N.M. 733, 55 P.3d 429. In interpreting the agreements, our goal is to "give effect to the intent of the parties, and when the terms of the agreement are clear and unambiguous, [we] try to ascertain the intent

of the parties from the ordinary meaning of the language in the agreement." *Heimann v. Kinder-Morgan CO2 Co.*, 2006-NMCA-127, ¶ 13, 140 N.M. 552, 144 P.3d 111 (internal quotation marks and citation omitted).

**{27}** We emphasize that nothing in the parties' agreements regarding the retention of Ms. Wagner prevents her from testifying at trial. Although the parties agreed to retain Ms. Wagner to prepare a valuation report for purposes of mediation, the agreement regarding the engagement of Ms. Wagner's services contemplates that additional fees would apply if Ms. Wagner was requested to testify at trial. The agreement clarifies that the original fee estimate included drafting the 2009 Valuation Report, but did not include "any services that may be required to defend [the] valuation report in litigation, including conferences, depositions, court appearances and testimony." Consequently, based upon the unambiguous terms of the engagement agreement, the parties expressly contemplated that Ms. Wagner may be requested to testify at trial regarding her valuation of NAPS.

**{28}** As previously discussed, the MPA prevents Ms. Wagner from testifying regarding the 2009 Valuation Report or other use of that report at trial. However, Ms. Wagner may testify regarding documents underlying the valuation of NAPS pursuant to the parties' agreement allowing the disclosure of those documents and the district court's determination that those underlying documents are not confidential and can be disclosed. In addition, the parties' agreements do not address Ms. Wagner's preparation or use of a new valuation report for trial purposes. Consequently, if the district court or the parties desire for Ms. Wagner to prepare a new expert valuation report for trial purposes, that new report would need to be prepared under the parameters of Ms. Wagner's appointment as a Rule 11-706 expert.

### D. Appointment of Ms. Wagner as a Rule 11-706 Expert

**{29}** Appellants argue that the district court erred by appointing Ms. Wagner as a Rule 11-706 expert due to her role as a nonparty participant in the mediation and her preparation of the 2009 Valuation Report for mediation purposes. We disagree.

**{30}** Rule 11-706(A) provides that the district court "may appoint any expert witnesses of its own selection to give evidence in the action except that, if the parties agree as to the experts to be appointed, the court shall appoint only those designated in the agreement." Pursuant to Rule 11-706, the district court has "authority to appoint an independent expert unaligned with either party to assist the court in determining significant issues in the proceeding." *Papatheofanis v. Allen*, 2009-NMCA-084, ¶ 11, 146 N.M. 840, 215 P.3d 778 (internal quotation marks and citation omitted). We review the district court's appointment of Ms. Wagner as a Rule 11-706 expert for an abuse of discretion. *See In re Adoption of Stailey*, 117 N.M. 199, 204-05, 870 P.2d 161, 166-67 (Ct. App. 1994) (concluding that Rule 11-706 gives the district court broad discretion to appoint an impartial expert witness to assist the court and to apportion the costs of the expert witness among the parties).

11

**{31}**    Before appointing Ms. Wagner as the Rule 11-706 expert witness, the district court considered Ms. Wagner's previous role in the mediation, the mutual agreement to retain Ms. Wagner to prepare an independent valuation of NAPS for the benefit of the parties, and the agreed sharing of the costs for Ms. Wagner's services equally among the parties. The court determined that Ms. Wagner "has no confidential information from the mediation process" and that Ms. Wagner was "not tainted in any way." The court further concluded that Ms. Wagner's testimony and opinion regarding the valuation would assist the court in determining the amount of liability and/or punitive damages if any. Additionally, the court reasoned that hiring a different expert witness would result in increased costs to the parties. Finally, the district court reasoned that even if Ms. Wagner had confidential information from the mediation process, her testimony could be limited to prevent disclosure of that information. As previously discussed, the MPA will impose a slight limitation on the content of Ms. Wagner's testimony, but it does not prohibit Ms. Wagner from otherwise testifying as a valuation expert as a result of her prior service as a nonparty participant in the mediation to prepare the 2009 Valuation Report. We conclude that the district court did not abuse its discretion by appointing Ms. Wagner as a Rule 11-706 expert witness and that Ms. Wagner may serve in that capacity, subject to the previously discussed limitations imposed by the MPA regarding any use of the 2009 Valuation Report.

**{32}**    If the district court desires for Ms. Wagner to prepare a new valuation report in her capacity as a Rule 11-706 expert, the nature and scope of any new report remains within the discretion of the district court, subject to the limitations imposed herein regarding the use of the 2009 Valuation Report. The scope of any new report may also take into account other circumstances that have transpired since the date of mediation. If a new valuation report is not prepared, then the MPA and the parties' existing agreements would limit Ms. Wagner's expert testimony to her opinion based upon the documents underlying her valuation of NAPS, without any submission or testimony regarding the 2009 Valuation Report. Although this Court's determination may effectuate little change in Ms. Wagner's expert testimony at trial, the parties' agreement combined with the limitations imposed by the MPA require such a result.

**CONCLUSION**

**{33}**    We affirm the district court's order regarding appointment of Ms. Wagner as a Rule 11-706 expert, but we reverse the district court's ruling that Ms. Wagner's 2009 Valuation Report may be used or admitted at trial. We remand the case to the district court for further proceedings consistent with this Opinion.

**{34}    IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**


_____

**JAMES J. WECHSLER, Judge**


**Topic Index for** *Warner v. Calvert*, **Docket No. 29,674**


| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-IA | Interlocutory Appeal |
| | |
| **EV** | **EVIDENCE** |
| EV-EW | Expert Witness |
| | |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-MI | Mediation Procedures Act |
| | |
| **RE** | **REMEDIES** |
| RE-ME | Mediation |
| | |
| **PR** | **PROPERTY** |
| PR-PV | Property Valuation |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |