# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 19, 2018

**NO. A-1-CA-35135**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SEAN VEST,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Chief Judge.**

{1}     Defendant Sean Vest appeals his conviction for aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003). On appeal, Defendant contends that under his interpretation of the aggravated fleeing statute, the evidence was insufficient to prove that he endangered the life of another person and, therefore, insufficient to support his conviction.[1] Defendant further contends that he was entitled to an instruction on the lesser included misdemeanor offense of resisting, evading, or obstructing an officer, which he did not receive. Because we are persuaded that a conviction under the aggravated fleeing statute requires a finding of actual endangerment and the direct and circumstantial evidence at trial was insufficient to support such a finding, we need not address whether Defendant was entitled to a lesser included instruction. Accordingly, we reverse Defendant's conviction for aggravated fleeing.

---

[1]This Court previously addressed the issue of whether actual endangerment is necessary to support aggravated fleeing in an opinion that was later vacated by the New Mexico Supreme Court upon a motion to abate the proceedings following the death of the defendant. *State v. Chavez*, 2016-NMCA-016, 365 P.3d 61, *vacated by* N.M. Sup. Ct. Order No. S-1-SC-35614 (Aug. 24, 2016). We note that we have borrowed heavily from the analysis and language of that vacated opinion in rendering our decision herein.

## BACKGROUND

{2} On September 19, 2014, shortly before 3:00 a.m., Officer Capraro was patrolling an area of Las Cruces, New Mexico when he saw a Pontiac Vibe parked nearby and observed a man get out of the driver's side of the car. The man spotted Officer Capraro's police cruiser, ran over to it, and told Officer Capraro that someone had threatened him with a knife and forced him out of his vehicle. Officer Capraro engaged his lights and siren and pursued the vehicle. The car sped away, made a right turn, and the officer lost sight of it. Officer Capraro drove over seventy miles per hour in his attempt to catch up with the vehicle. The roads were wet from a recent rain storm. Officer Capraro subsequently found the vehicle crashed and abandoned in a residential area. The car was determined to have gone onto the sidewalk and hit a sign before coming to a stop. Defendant was ultimately apprehended by a police canine unit.

{3} Defendant was indicted on one count of armed robbery and one count of aggravated fleeing a law enforcement officer. After a jury trial, Defendant was acquitted of armed robbery, but convicted of aggravated fleeing, a fourth degree felony. This appeal followed.

**DISCUSSION**

{4}    Defendant makes two arguments on appeal. First, Defendant contends that the evidence was not sufficient to sustain his conviction for aggravated fleeing because the State failed to establish that he drove in a manner that endangered the life of any individual. Second, he argues that he was entitled to an instruction on the lesser included misdemeanor offense of resisting, evading, or obstructing an officer. Because we reverse on the first issue, we need not reach Defendant's second argument.

{5}    In order to determine whether there is sufficient evidence to support Defendant's conviction for aggravated fleeing, we must first address the contrasting interpretations of the aggravated fleeing statute presented by the parties. Defendant contends that "[t]he statute and jury instructions in this case required the State to establish that [Defendant] actually endangered the life of another person during the pursuit." Defendant contends that an interpretation other than one that requires actual endangerment "would transform virtually all fleeing into aggravated fleeing" and would "fail to give effect to the statutory language requiring that the fleeing be both careless and 'in a manner that endangers the life of another person.' " Conversely, the State argues that the fleeing statute is intended to protect the public from the danger of high speed chases, and a defendant's culpability should be based on the decision

3

to flee "and to do so by driving carelessly and dangerously." The State contends that "the Legislature intended that willful, careless driving 'in a manner that endangers the life of another' means careless driving that could result in harm to another person" and that actual endangerment is not required. According to the State, to interpret the statute as Defendant suggests would be to "assign culpability based on serendipity[,]" rather than a defendant's conduct and state of mind.

**Principles of Statutory Construction**

{6}    Our goal when interpreting statutes is to ascertain and effectuate legislative intent. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047. We first look to the statute's plain language, which is "the primary indicator of legislative intent." *State v. Young*, 2004-NMSC-015, ¶ 5, 135 N.M. 458, 90 P.3d 477 (internal quotation marks and citation omitted). "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Wilson*, 2010-NMCA-018, ¶ 9, 147 N.M. 706, 228 P.3d 490 (internal quotation marks and citation omitted). Appellate courts "will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. To ensure that our application of the plain meaning rule indicates the true legislative intent, we may look to the history and purpose of the statute to aid our

statutory construction analysis. *See State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 ("In performing our task of statutory interpretation, not only do we look to the language of the statute at hand, we also consider the history and background of the statute."). In doing so, we examine the language in the context of the statutory scheme, legislative objectives, and other statutes in pari materia in order to determine legislative intent. *See State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23. "Finally, while we would be exceeding the bounds of our role as an appellate court by second-guessing the clear policy of the Legislature, when the statute is ambiguous, we may nonetheless consider the policy implications of the various constructions of the statute." *Rivera*, 2004-NMSC-001, ¶ 14 (citation omitted).

**The Aggravated Fleeing Statute**

{7}    The aggravated fleeing statute reads, in pertinent part, that a person commits aggravated fleeing by "willfully and carelessly driving [a] vehicle *in a manner that endangers the life of another person* after being given a visual or audible signal to stop . . . by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle." Section 30-22-1.1(A) (emphasis added). A violation of Section 30-22-1.1(A) is a fourth degree felony. Section 30-22-1.1(B). Driving in a manner that endangers another person is an essential element of the aggravated fleeing

statute. *See* UJI 14-2217 NMRA ("[T]he state must prove to your satisfaction beyond a reasonable doubt . . . [that t]he defendant drove willfully and carelessly in a manner that endangered the life of another person[.]").

**{8}** We view the aggravated fleeing statute as evincing legislative intent to more severely punish people who jeopardize the safety of others while fleeing from law enforcement officers. Historically, conduct intended to thwart the efforts of an arresting officer constituted the misdemeanor crime of resisting, evading, or obstructing an officer. *See* NMSA 1978, § 30-22-1 (1981). As noted by our Supreme Court, "[t]he legislative decision to create the crime of aggravated fleeing suggests a hierarchy of criminal liability based on the aggravated nature of a defendant's conduct." *State v. Padilla* (*Padilla II*), 2008-NMSC-006, ¶ 14, 143 N.M. 310, 176 P.3d 299. This aggravated nature exists specifically "when the person flees in a manner that endangers the lives of others[.]" *Id.* Importantly, the Legislature chose not to repeal any portion of Section 30-22-1 upon the enactment of 30-22-1.1. Instead, the resisting, evading, or obstructing an officer statute remains in effect and criminalizes conduct related to vehicular flight from law enforcement. *See* § 30-22-1(C) ("Resisting, evading or obstructing an officer consists of . . . willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed

6

officer in an appropriately marked police vehicle[.] . . . Whoever commits resisting, evading or obstructing an officer is guilty of a misdemeanor."). The logical inference to be drawn from the Legislature's decision not to repeal any portion of Section 30-22-1 is that an individual may flee from law enforcement, even in a vehicle, without triggering prosecution under the aggravated fleeing statute, so long as the fleeing individual does not endanger others in the process. *See generally State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 ("We examine the overall structure of the statute and its function in the comprehensive legislative scheme.").

{9}     Neither the aggravated fleeing statute, nor the corresponding uniform jury instruction defines the term "endangers" as used in the statute. *See* § 30-22-1.1; UJI 14-2217. "When a term is not defined in a statute, we must construe it, giving those words their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Tsosie*, 2011-NMCA-115, ¶ 19, 150 N.M. 754, 266 P.3d 34 (internal quotation marks and citation omitted). Our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries. *State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830. "Endangerment" is defined as "[t]he act or an instance of putting someone or something in danger; exposure to peril or harm." *Black's Law Dictionary* 644 (10th ed. 2014). Non-legal dictionaries offer similar definitions of both "endanger" and

7

"endangerment." *See 5 The American Heritage Dictionary of the English Language* 588 (5th ed. 2011) ("To expose to harm or danger; imperil."); *The Oxford English Dictionary* 225 (2d ed. 1991) ("The action of putting in danger; the condition of being in danger."). Each of these definitions indicates that the exposure to the peril or harm is an actual or current condition facing the impacted person. None of these definitions indicates a potential or future condition. Since the plain language of the statute does not contemplate potential or future harm in its use of the word "endanger," and the statute "makes sense"—with respect to who is subject to prosecution—as written, *see Trujillo*, 2009-NMSC-012, ¶ 11, we will not read the statute to include potential harm absent direction from the Legislature. *Clark v. Lovelace Health Sys., Inc.*, 2004-NMCA-119, ¶ 14, 136 N.M. 411, 99 P.3d 232 ("When language in a statute enacted by the [L]egislature is unambiguous, we apply it as written, and any alteration of that language is a matter for the [L]egislature, not for this Court."), *overruled on other grounds by Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 42, 373 P.3d 977.

**Sufficiency of the Evidence**

{10}     Having determined that the aggravated fleeing statute requires that the State prove actual endangerment to another person, we now turn to Defendant's argument that the evidence presented at trial was insufficient to support his conviction. We

8

focus solely on the element of endangerment, as this appears to be the only element of his conviction for aggravated fleeing Defendant challenges on appeal.

{11} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Id.* (internal quotation marks and citation omitted). The function of an appellate court with respect to challenges to the sufficiency of the evidence is to "ensure that a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* (internal quotation marks and citation omitted). We apply these principles to determine if Defendant's conviction for aggravated fleeing is supported by sufficient evidence.

{12} As a threshold matter, we note that, as the State points out, drawing inferences from the previous published opinions of our courts related to aggravated fleeing is not

9

entirely useful given that, in those cases, passengers were present in the vehicles while the drivers were fleeing from law enforcement. *See Padilla II*, 2008-NMSC-006, ¶ 4 ("[T]here were two passengers in the car."); *State v. Coleman*, 2011-NMCA-087, ¶ 22, 150 N.M. 622, 264 P.3d 523 (having "little trouble concluding" that the defendant endangered the lives of his passengers and the deputy sheriff during the chase); *State v. Ross*, 2007-NMCA-126, ¶ 2, 142 N.M. 597, 168 P.3d 169 ("There were four passengers still in the vehicle."). In the present case, Defendant was operating a vehicle without a passenger. Because of this distinction, comparison between the willful and careless behavior exhibited by the drivers/defendants in our previous cases—including speeding, running through stop signs, crossing the center line, and crashing into curbs or other stationary objects—and the alleged willful and careless conduct exhibited by Defendant in the present case are of limited value. *See, e.g., Padilla II*, 2008-NMSC-006, ¶ 3; *Coleman*, 2011-NMCA-087, ¶ 4; *Ross*, 2007-NMCA-126, ¶ 2. Within these cases, however, there are descriptions of conduct that demonstrate endangerment of other motorists who encountered defendants on the roadways. *See State v. Padilla* (*Padilla I*), 2006-NMCA-107, ¶ 5, 140 N.M. 333, 142 P.3d 921 ("[The d]efendant barely missed colliding with another motorist."), *rev'd on other grounds*, *Padilla II*, 2008-NMSC-006, ¶ 34; *Ross*, 2007-NMCA-126, ¶ 2 ("Another vehicle had to abruptly stop in order to avoid colliding with [the

d]efendant."). It is to this conduct that we look to determine whether Defendant endangered another person within the meaning of the aggravated fleeing statute.

{13} Even when viewing the evidence in the light most favorable to the guilty verdict, we conclude that the State has not presented sufficient evidence to prove that Defendant endangered another person as required by the statute. The State did not present any evidence that Defendant's flight from police actually endangered another person. Rather, the State contends that Defendant's "driving at least [seventy] miles per hour through a residential area, on a wet and slippery road, with at least one curve in it[;] . . . crash[ing] the car into a traffic sign[;] rendering the car inoperable[;] and [getting] out of the car and [leaving] it in the middle of the roadway" were dangerous actions that "created a potential for harm to the public." There was not, however, any evidence presented that Defendant encountered any other motorists on the roadway. As such, no reasonable jury could have found beyond a reasonable doubt that Defendant endangered another person within the meaning of the aggravated fleeing statute. *See* § 30-22-1.1.

{14} Moreover, to the extent the State contends Officer Capraro was placed in danger through his pursuit of Defendant, we again conclude that there was insufficient evidence presented for a reasonable jury to have found actual endangerment of the officer as a result of Defendant's driving. The evidence

11

presented established that Officer Capraro lost sight of Defendant shortly after engaging his emergency equipment and later found the car Defendant had been driving crashed and abandoned. While the State asserts that the officer's pursuit of Defendant at seventy miles per hour on rain-slicked roads supports Defendant's conviction for aggravated fleeing, the State's argument is just another means of asserting that potential danger is sufficient. However, it is not.

{15}     This is not to say that endangerment requires that a fleeing motorist pass within inches of another vehicle or that an accident is avoided only through extraordinary evasive maneuvering by another driver. When a jury returns a verdict based on evidence indicating actual endangerment, that verdict should not be disturbed. However, when, as here, the record is completely devoid of evidence of actual endangerment to passengers or other motorists, the verdict cannot stand.

**CONCLUSION**

{16}     For the foregoing reasons, we reverse Defendant's conviction for aggravated fleeing a law enforcement officer, contrary to Section 30-22-1.1. As a result, we do not reach Defendant's argument that he was entitled to a jury instruction on the lesser included misdemeanor offense of resisting, evading, or obstructing an officer.

{17}     **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

12

**WE CONCUR:**

_____
**JULIE J. VARGAS, Judge**


_____
**STEPHEN G. FRENCH, Judge**