**Certiorari Denied, August 3, 2011, No. 33,053**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-087**

**Filing Date: May 6, 2011**

**Docket No. 29,143**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**JERICOLE COLEMAN,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### OPINION

**CASTILLO, Chief Judge.**

**{1}**     Defendant was convicted of aggravated fleeing in violation of NMSA 1978, Section 30-22-1.1 (2003), and conspiracy to commit shooting at a dwelling in violation of NMSA 1978, Section 30-28-2 (1979).  He challenges two evidentiary rulings, claims that the denial of his motion for directed verdict was error, and raises two issues regarding jury instructions. We affirm.

1

**BACKGROUND**

**{2}**     At approximately 4:00 a.m. on April 12, 2008, Defendant received a phone call from Mario Montoya and Daniel Martinez.  They asked Defendant for a ride from a party, Defendant agreed, picked them up, and then accompanied them back to Mario's home. Mario then suggested that they go "do some shootings." Defendant reluctantly agreed to this plan and drove them to a location in Roswell selected by Mario, a trailer located at 2409 North Mesa Street.  When they reached the trailer, Mario exited Defendant's vehicle and fired three rounds at the trailer.

**{3}**     At the time of the shooting, Richard Villa was the owner of the targeted trailer. Although he had recently moved from the trailer, he still kept varying possessions there and parked two vehicles in front of the trailer.  The shots Mario fired entered the trailer's bedroom, living room, and kitchen and struck one of Villa's cars.

**{4}**     A sheriff's deputy, who happened to be in the vicinity of Villa's trailer at the time of the shooting, heard the shots and proceeded in his marked sheriff's vehicle toward the sounds.  The deputy encountered Defendant as he was driving away from the trailer with Daniel and Mario.  The deputy began to follow Defendant, who rapidly accelerated in an attempt to flee.  A high speed chase ensued; Defendant drove in excess of 100 miles per hour, ran through several stop signs, and a shotgun was jettisoned from the vehicle.  The deputy's emergency lights and siren were activated throughout the pursuit.  The chase came to a sudden conclusion when Defendant slammed into a curb, immobilizing his vehicle.

**{5}**     Defendant, Daniel, and Mario were arrested and taken to the police station.  At the station, Defendant was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and he agreed to speak with Officer Northcutt.  Defendant acknowledged his participation in the shooting and the high speed chase, but explained that his conduct was a consequence of peer pressure, and he claimed that he was merely following Mario's commands.

**{6}**     In May 2008, Defendant was charged by criminal information with one count of aggravated fleeing in violation of Section 30-22-1.1 and one count of conspiracy to commit shooting at a dwelling in violation of Section 30-28-2.  At a pretrial conference, the State raised the issue of the admissibility of evidence relating to the deputy's compliance with the Chavez County high speed pursuit policy.  Citing *State v. Padilla*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299, the State asked the court to "exclude from all stages of the trial" any inquiry into whether the officer's conduct conformed to the requirements of the policy. After reviewing *Padilla*, the court issued a letter ruling prohibiting "evidence pertaining to the . . . pursuit policy or compliance therewith."

**{7}**     At his jury trial, Defendant objected to Officer Northcutt's testimony about Defendant's post-arrest statements. The district court denied the objection and determined that the State had laid a sufficient foundation.  At the close of the State's case, Defendant moved for a directed verdict as to both counts. Defendant asserted that there was insufficient

2

evidence that he committed aggravated fleeing or conspiracy to commit shooting at a dwelling. The court disagreed and denied the motion.

{8}    As to jury instructions, Defendant asked the court to provide the jury with an instruction informing them of the requirements of NMSA 1978, Section 31-1-5(A) (1973), which states that "[f]ollowing arrest, any person accused of a crime is entitled to have reasonable opportunity to make three telephone calls beginning not later than twenty minutes after the time of arrival at a police station." Defendant explained that he wanted the jury to be aware that he had not been informed that "he could make three phone calls as required by the statute." The court denied the requested instruction and concluded that the statute did not require officers to inform suspects of their right to make phone calls.

{9}    The jury convicted Defendant of both charges. The court entered judgment and sentenced Defendant to eighteen months of incarceration to be followed by one year of parole. Defendant appeals.

**DISCUSSION**

{10}    Defendant raises five issues on appeal. As to the evidence presented, Defendant claims that the district court erred in admitting Officer Northcutt's testimony regarding Defendant's post-arrest statements and asserts that the court erred "in suppressing evidence regarding" the Chavez County high speed pursuit policy. Defendant next argues that the district court erred in denying his motion for directed verdict as to both counts. Finally, Defendant claims two errors in the jury instructions. First, he argues that the court erred in failing to issue an instruction "concerning his right to be informed that he could make three phone calls while in custody, pursuant to . . . Section 31-1-5(A)." Second, he asserts that the instruction given as to the charge of conspiracy to commit shooting at a dwelling was insufficient because the jury was not instructed that Defendant must have known or should have known that the trailer was occupied. We address these arguments in turn.

**Evidentiary Rulings**

{11}    "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse. An abuse of discretion occurs when a ruling is against logic and is clearly untenable or not justified by reason." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 (internal quotation marks and citations omitted).

{12}    Defendant's first claim is that Officer Northcutt should not have been permitted to testify about the statements Defendant made during the post-arrest interrogation. Defendant asks this Court to suppress this portion of Officer Northcutt's testimony on the basis that Defendant's statements were involuntary. The State objects that this argument was not preserved and asserts that Defendant failed to file a motion to suppress at or before trial nor did he raise the issue of voluntariness at trial. The State asserts that a careful review of the record reveals that Defendant objected to the admissibility of Northcutt's testimony on foundational grounds only. We review the events at trial and the circumstances surrounding

3

Defendant's objection.

**{13}** On direct examination, Officer Northcutt testified that he had been on duty the night of the shooting, during which he interviewed Defendant and his two companions. He explained that he read Defendant his *Miranda* rights prior to questioning him. Officer Northcutt also stated that, in his opinion, Defendant understood his rights. The State asked whether Defendant admitted involvement in the incident at 2409 North Mesa and asked Officer Northcutt, "What did [Defendant] eventually say about how he got involved?" Defendant objected at this point stating, "Your honor, unless he's [going to] introduce the statement, the court needs to rule on admissibility." The court appeared confused by this objection and said, "Uh . . . well . . . [State], I'll allow you to establish or lay some more foundation if you'd like in regard to a knowing and voluntary statement" by Defendant. The State proceeded to inquire further about whether Defendant had been properly *Mirandized*. Afterwards, the State addressed the court and stated, "I believe that's sufficient foundation, your honor." The court agreed and directed the State to "proceed." Defendant made no further objection.

**{14}** Defendant cites the portion of the record discussed above and claims that he objected to Officer Northcutt's statements "arguing that the foundation for a valid and voluntary waiver of his *Miranda* rights had not been laid" and goes on to argue that the district court should have concluded that his statements were involuntary and suppressed Officer Northcutt's testimony. At trial, Defendant did not, however, raise the issue of voluntariness and did not request suppression. He made only a foundational objection as to whether Officer Northcutt complied with the procedural requirements of *Miranda*. On appeal, Defendant conflates the necessity for *Miranda* warnings with the voluntariness of the statement.

**{15}** In *State v. Gallegos*, 92 N.M. 336, 340, 587 P.2d 1347, 1351 (Ct. App. 1978), we observed that the "[*Miranda*] requirements for admissibility and the 'voluntariness' requirements for admissibility are separate concepts." This distinction arises from the fact that *Miranda* not only requires that a defendant's statements be voluntary to be admissible, but also holds that admissibility is independently contingent on officer compliance with the strict procedural rules articulated in *Miranda*. *Gallegos*, 92 N.M. at 340, 587 P.2d at 1351. We provided the following explanation:

> [U]nless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary.

*Id.*

**{16}** At his trial, Defendant raised a foundational objection implicating the *Miranda* procedural requirements. On appeal, he argues about the voluntariness requirements. This

4

latter ground was not raised or argued below and will not be reviewed. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). Defendant takes no issue with the court's determination that an adequate foundation was laid as to the *Miranda* procedural requirements. As a result, we proceed to the next evidentiary issue on appeal.

**{17}** Defendant's second evidentiary argument concerns the district court's decision to exclude evidence pertaining to the Chavez County high speed pursuit policy and to also exclude any evidence relating to the deputy's compliance with that policy. As we understand Defendant's argument on appeal, he is asking us to hold that he should not have been convicted of aggravated fleeing because the deputy who pursued him violated the Chavez County high speed pursuit policy.

**{18}** Defendant appears to acknowledge that this argument is contrary to the majority opinion in *Padilla* where our Supreme Court concluded that officer compliance with the Law Enforcement Safe Pursuit Act, NMSA 1978, Sections 29-20-1 to -4 (2003), or a local policy adopted thereunder, is not an essential element of the crime of aggravated fleeing. *Padilla*, 2008-NMSC-006, ¶¶ 8, 34. He asks us to ignore the majority opinion and to adopt the dissenting opinion in *Padilla*. We decline to do so. *See State v. Swick*, 2010-NMCA-098, ¶ 21, 148 N.M. 895, 242 P.3d 462 ("Defendant urges this Court to adopt the position of the dissenting justices. This we cannot do."), *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147; *see also State v. Glascock*, 2008-NMCA-006, ¶ 26, 143 N.M. 328, 176 P.3d 317 (noting that the Court of Appeals is bound by Supreme Court precedent), *cert. quashed*, 2009-NMCERT-006, 146 N.M. 734, 215 P.3d 43.

**Directed Verdict**

**{19}** Defendant next argues that the district court erred in denying his motion for directed verdict as to both charges and asks this Court to reverse his convictions. "The question presented by a directed verdict motion is whether there was substantial evidence to support the charge." *State v. Rael*, 1999-NMCA-068, ¶ 5, 127 N.M. 347, 981 P.2d 280 (internal quotation marks and citation omitted). Specifically, we inquire "whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each element of the crime." *State v. Armijo*, 1997-NMCA-080, ¶ 16, 123 N.M. 690, 944 P.2d 919. "We do not weigh evidence or substitute our judgment for that of the trial court so long as the jury was presented with such relevant evidence as a reasonable mind might accept as adequate to support [its verdict]." *State v. Schackow*, 2006-NMCA-123, ¶ 8, 140 N.M. 506, 143 P.3d 745 (alteration in original) (internal quotation marks and citation omitted). We analyze the evidence in light of the jury instructions submitted at trial. *State v. Barreras*, 2007-NMCA-067, ¶ 3, 141 N.M. 653, 159 P.3d 1138.

**Aggravated Fleeing**

**{20}** The jury was instructed that the essential elements of aggravated fleeing of a law enforcement officer include:

1. The defendant operated a motor vehicle;
2. The defendant drove willfully and carelessly in a manner that endangered the life of another person;
3. The defendant had been given a visual or audible signal to stop, either by light, siren, or other signal by a uniformed law enforcement officer;
4. The uniformed law enforcement officer was in an appropriately marked law enforcement vehicle engaged in pursuit[.]

Defendant takes issue only with the evidence as to element two; he does not contest the evidence underlying the other elements. Specifically, Defendant claims that there was insufficient evidence that he drove carelessly and claims that there was insufficient evidence that he endangered the life of another person.

**{21}** The evidence at trial established that Defendant drove at speeds exceeding 100 miles per hour through residential areas of Roswell, New Mexico, and ignored and drove through several stop signs also while traveling at excessive speeds. The chase concluded only after Defendant struck a curb and damaged his vehicle rendering it immobile. We have little difficulty concluding, given these facts, that there was sufficient evidence Defendant "drove willfully and carelessly."

**{22}** We also have little trouble concluding that Defendant endangered "the life of another person" by his conduct. *See* § 30-22-1.1(A). The lives of his passengers, Daniel and Mario, and the life of the deputy sheriff were placed in jeopardy during the chase. *See Padilla*, 2008-NMSC-006, ¶ 17 (relying on the fact that the defendant endangered his passengers and the pursuing officer during a high speed chase in reaching the conclusion that all of the elements of aggravated fleeing were met). We see no error with the district court's decision to deny the directed verdict motion as to the aggravated fleeing charge.

**Conspiracy**

**{23}** Defendant was convicted of conspiracy in violation of Section 30-28-2. A conspiracy "consists of knowingly combining with another for the purpose of committing a felony." Section 30-28-2(A). The underlying felony here is "[s]hooting at a dwelling" in violation of NMSA 1978, Section 30-3-8(A) (1993). Defendant argues on appeal that there was insufficient evidence to prove that he conspired to commit shooting at a dwelling. He makes two specific claims to support this argument. We address them in turn.

**{24}** First, Defendant asserts that he had no reason to know that Villa's trailer was occupied at the time of the shooting which, he claims, is an essential element of the offense of shooting at a dwelling. The State responds that Defendant has conflated shooting at a dwelling with shooting at an occupied building and asserts that knowledge of occupancy is not an essential element of shooting at a dwelling. We agree with the State.

**{25}** Section 30-3-8(A) is violated when a defendant willfully discharges "a firearm at a dwelling or occupied building." It is apparent that the "or" between the terms "dwelling"

6

and "occupied building" operates in the disjunctive. A criminal defendant may violate the statute *either* by shooting at a "dwelling" *or* by shooting at an "occupied building." The uniform jury instruction associated with Section 30-3-8(A) bears this out. *See* UJI 14-340 NMRA (directing courts to determine whether the charge is shooting at a dwelling or shooting at an occupied building and instructing courts to use only the applicable alternative).

{26}     In this case, the jury was properly instructed at Defendant's trial that shooting at a dwelling consists of "1. The defendant willfully shot a firearm at a dwelling; 2. The defendant knew that the building was a dwelling[.]" *See* UJI 14-340. In addition, the jury was properly instructed that the term "dwelling" means "any structure, any part of which is customarily used as living quarters." *See id.* Use Note 1; UJI 14-1631 NMRA. Defendant raises no issues as to whether Villa's trailer constituted a dwelling. Rather, he focuses on the second part of Section 30-3-8—the portion relating to the crime of shooting at an occupied building. He relies on *State v. Elmquist*, 114 N.M. 551, 844 P.2d 131 (Ct. App. 1992), and he argues that knowledge of occupation is an essential element of shooting at a dwelling. We disagree. Knowledge of occupation is not an element of shooting at a dwelling. *See* UJI 14-340. Moreover, *Elmquist* is inapposite. There, we held that shooting at an occupied building requires that "the accused knew or should have known that the building at which they were shooting was occupied" at the time of the shooting. *Elmquist*, 114 N.M. at 554-55, 844 P.2d at 134-35. However, Defendant was not charged with conspiracy to commit shooting an occupied building. Rather he was charged with conspiracy to shoot a firearm at a dwelling, and there is no occupancy requirement for this charge.

{27}     Defendant also claims that the evidence was insufficient to support the charge of conspiracy to commit shooting at a dwelling because there was no evidence he "willfully sought to shoot at the trailer." "In order to be convicted of conspiracy, the defendant must have the requisite intent to agree and the intent to commit the offense that is the object of the conspiracy." *State v. Varela*, 1999-NMSC-045, ¶ 42, 128 N.M. 454, 993 P.2d 1280. "The requisite culpability of the crime of shooting at a dwelling, as stated in Section 30-3-8 and repeated in the jury instruction, is willful . . . behavior. Under New Mexico law, willful conduct is conscious or intentional conduct." *Varela*, 1999-NMSC-045, ¶ 42. Here, Defendant willfully agreed to drive Mario and Daniel to "do some shootings" and willfully drove to the location Mario selected—Villa's trailer—knowing full well what Mario intended to do when they arrived at the destination. This evidence is sufficient to prove Defendant had the requisite intent to agree and the intent to commit shooting at a dwelling, the object of the conspiracy charge for which Defendant was convicted.

**Jury Instructions**

{28}     Defendant raises two issues with respect to the jury instructions proffered at his trial. He argues that the district court erred in refusing to instruct the jury that Defendant was denied his "rights" to post-arrest phone calls as provided by Section 31-1-5(A) and claims, for the first time on appeal, that the instruction proffered on the conspiracy charge was flawed.

7

The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.

*State v. Bennally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). We address Defendant's arguments in turn.

**{29}** Section 31-1-5(A) provides that "[f]ollowing arrest, any person accused of a crime is entitled to have reasonable opportunity to make three telephone calls." Defendant asserted below, as he does on appeal, that he was denied the "rights" extended to him by this statute. Accordingly, he claims that he was entitled to an instruction informing the jury of this deprivation because such an instruction "would have been helpful to the defense in that it would have permitted the jury to consider the violation of the statute in assessing the voluntariness of [Defendant's post-arrest] statement[s]." Defendant asks for a new trial at which such an instruction can be issued.

**{30}** Whether Defendant was entitled to an instruction based on Section 31-1-5(A) was preserved and, therefore, reviewed for reversible error. We have little trouble concluding that Defendant failed to establish error of any kind. Section 31-1-5(A) merely states that following arrest, any person accused of a crime is "entitled" to a "reasonable opportunity" to make three calls. Contrary to Defendant's arguments, the statute neither provides a criminal defendant with a "right" to make three calls—the statute speaks merely of an entitlement—nor addresses the officer's duty to inform a criminal defendant of his or her entitlement to make those calls. In addition, the statute has no bearing on the issue of Defendant's culpability for the offense for which he was charged. *See Jackson v. State*, 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) (concluding that absence in jury instruction of an essential element of the crime is reversible error). Finally, it is unclear how Section 31-1-5(A) fits into Defendant's theory of his case. *State v. Jernigan*, 2006-NMSC-003, ¶ 3, 139 N.M. 1, 127 P.3d 537 ("Failure to instruct a jury on a defendant's theory of the case is reversible error."). Defendant claims he was entitled to the instruction so as to bolster his assertion that his post-arrest statements were involuntary. The issue of the voluntariness of Defendant's post-arrest statements, however, was not raised at trial. For these reasons, we conclude that the court did not err in rejecting Defendant's request for an instruction concerning Section 31-1-5(A).

**{31}** Turning to Defendant's second argument on appeal concerning the instructions, Defendant claims that the court committed fundamental error in failing to instruct the jury that Defendant must have known Villa's trailer was occupied at the time of the shooting. We addressed and rejected this argument in the portion of this opinion upholding the district court's denial of the motion for directed verdict as to the charge of conspiracy. The analysis set out there applies here.

**CONCLUSION**

8

**{32}** For the foregoing reasons, we affirm.

**{33}   IT IS SO ORDERED.**

_____
                                        **CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Coleman*, Docket No. 29,143**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-SR | Standard of Review |
| AE-PA | Preservation of Issues for Appeal |
| AE-SB | Substantial or Sufficient Evidence |

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-CS | Conspiracy |
| CL-FL | Fleeing |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-DV | Directed Verdict |
| CA-MW | Miranda Warnings |

| **EV** | **EVIDENCE** |
|---|---|
| EV-AE | Admissibility of Evidence |
| EV-AD | Admissions |

| **JI** | **JURY INSTRUCTIONS** |
|---|---|
| JI-CJ | Criminal Jury Instructions |